UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT SOUTH BEND

TERRENCE T. MILLER-BEY,

Plaintiff,

v.

RON NEAL, et al.,

Defendants.

CAUSE NO. 3:25-CV-159-PPS-JEM

<u>OPINION AND ORDER</u>

Terrence T. Miller-Bey, a prisoner without a lawyer, filed a complaint against

seven defendants asserting he was denied halal meals, prohibited from celebrating

Muslim holidays, and discontinued religious services for his faith. He also asserts that

he was denied adequate medical care. Miller-Bey seeks both monetary damages and

injunctive relief. [ECF 1.] A document filed *pro se* is to be liberally construed, and a *pro*

*se* complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must

review the merits of a prisoner complaint and dismiss it if the action is frivolous or

malicious, fails to state a claim upon which relief may be granted, or seeks monetary

relief against a defendant who is immune from such relief.

***Claims Relating to His Meals***

Miller-Bey first alleges that the standard prison meals he was provided at the

Indiana State Prison ("ISP") violates his right to freely exercise his religion as provided

by the Free Exercise Clause of the First Amendment. ECF 1 at 2-4. "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) (citation and internal quotation marks omitted). "[F]orcing an inmate to choose between daily nutrition and religious practice is a substantial burden." *Id*. at 380. Though, "[i]n the prison context, a regulation that impinges on an inmate's constitutional rights, such as one imposing a 'substantial burden' on free exercise, may be justified if it is 'reasonably related to legitimate penological interests.'" *Kaufman*, 733 F.3d at 696 (quoting *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987)).

Miller-Bey, who has been housed at ISP since March 2023, states he is a Moorish Nationalist of the Mohammedan sect, a faithful member of the Moorish Science Temple of America ("MSTA"), and a practicing Muslim. ECF 1 at 2. He asserts that, after he arrived at ISP, he applied for a halal diet, but, on July 18, 2023, Religious Director David Liebel denied his request. *Id*. at 2-3; ECF 1-1 at 2. His denial letter, however, indicated that Miller-Bey's request for a kosher diet was being denied, not a halal diet. ECF 1-1 at 2. In denying his request, Religious Director Liebel considered Miller-Bey's documented religious preference, his history of commissary and other purchases made sixty days prior to his application, and other information he provided. *Id*. He noted that Miller-Bey purchased non-kosher, non-halal commissary food items, including ramen, chicken, cheese, and turkey on May 19, 2023, and ramen again on June 2, 2023. *Id*.

2

Miller-Bey, however, asserts that he is Muslim, not Jewish. ECF 1 at 3. He is not bound by the Jewish religion, law, or practices, and should not be held to the criteria of a religion outside of his own. *Id*. He filed a grievance and the grievance officer spoke with Chaplain Anne Walker about the situation. *Id*.; ECF 1-1 at 4. The grievance officer responded to Miller-Bey's grievance by reporting that Chaplain Walker told him there are only three diet choices, in addition to the standard diet, which consisted of kosher, vegan, and lacto-ovo vegetarian diets. *Id*. She explained that, if an inmate chooses a kosher diet because its closest to a halal diet they "still need to adhere to the [k]osher diet requirements. If [an inmate is] going to request a [k]osher diet, [they] will need to follow the requirements for being able to receive and maintain such a diet." *Id*. The grievance officer further explained that, since Miller-Bey did not receive and maintain the requirements for such a diet, his request was denied and staff was authorized to make that decision. *Id*.

Miller-Bey maintains that he was forced to go against his deeply held religious beliefs and eat standard meals that contain haram animal by-products and high carbohydrates, which Muslims are not permitted to consume. ECF 1 at 3-4. Giving Miller-Bey the inferences to which he is entitled at this stage of the proceedings, I find he has stated plausible First Amendment Free Exercise claims against Religious Director Liebel and Chaplain Walker in their individual capacities for compensatory and punitive damages for denying him a diet consistent with his sincere religious beliefs

3

beginning in July 2023.[1] Furthermore, Miller-Bey is also entitled to proceed on a claim for injunctive relief against Warden Ron Neal to obtain a diet that complies with his sincere religious beliefs. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out.").

Miller-Bey further challenges his diet under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a) ("RLUIPA"). RLUIPA offers broader protections than the First Amendment by prohibiting substantial burdens on "any exercise of religion [by an inmate], whether or not compelled by, or central to, a system of religious belief." *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *see also* 42 U.S.C. § 2000cc-5(7)(A). As with the First Amendment, "a prisoner's request . . . must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015). To state a claim under RLUIPA, an inmate must plausibly allege that an aspect of his religious practice has been substantially burdened. *Id.* At a later stage, the burden will shift to the defendant to show that the challenged conduct is the least restrictive means of pursuing a compelling governmental interest. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005); *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008). However, RLUIPA does not permit a suit against an individual for money damages. *See Nelson v. Miller*, 570 F.3d 868, 886-89 (7th Cir. 2009), *abrogated on other grounds by Jones v.*

---

[1] While Miller-Bey alleges that each of the defendants violated his First Amendment Free Exercise rights by denying him halal or kosher meals, he has not alleged facts from which it can be plausibly inferred that Warden Neal, Assistant Warden Dawn Buss, Dr. Nancy Marthakis, Nurse Kim Pflughaupt, or Nurse Tiffany Turner had anything to do with the decisions regarding his request for a halal or kosher diet. Therefore, I will not allow him to proceed against them in their individual capacities for this claim.

*Carter*, 915 F.3d 1147, 1149-50 (7th Cir. 2019). Nor does it allow for money damages against the state. *Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011). Miller-Bey's recourse under RLUIPA is limited to injunctive relief, so the only potential defendant for this claim is Warden Neal, in his official capacity.

Here, Miller-Bey has sued Warden Neal in his official capacity for injunctive relief to obtain a diet that complies with his "sincere religious belief to regularly consume halal meat from herbivorous animals and to eat food prepared by Muslims to the extent required by RLUIPA." ECF 1 at 12. The requirement that the food be prepared by a Muslim and that he regularly consume herbivorous meat is not met by the standard diet he currently receives at ISP.

The prison's responsibility under RLUIPA to accommodate his religious beliefs is greater than under the First Amendment and requires the prison to show that providing Miller-Bey a standard diet in place of what he requests is the least restrictive means of pursing a compelling government interest, not just that it is reasonably related to a legitimate penological interest. So, this claim must be allowed to proceed under RLUIPA. As for the other claim, I am dubious that RLUIPA also requires that certain foods only be prepared by Muslims. But because the one claim survives screening, I will allow this claim to also get past screening to be dealt with later and with the benefit of the adversarial process. Therefore, Miller-Bey may proceed under RLUIPA against Warden Neal in his official capacity to obtain a diet that complies with his sincere religious belief to regularly consume halal meat from herbivorous animals and to eat food prepared only by Muslims.

*Celebratory Meals*

Miller-Bey next identifies an instance of differential treatment between Muslim prisoners and prisoners who practice other religions, which he asserts violates the Establishment Clause. The Establishment Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. I, cl. 1. The Establishment Clause prohibits a defendant from treating members of some religious faiths more favorably than others without a secular reason. *See Cruz v. Beto,* 405 U.S. 319, 322-23 (1972); *Nelson,* 570 F.3d at 880-82; *Kaufman v. McCaughtry*, 419 F.3d 678, 683-84 (7th Cir. 2005). "Prisons cannot discriminate against a particular religion except to the extent required by the exigencies of prison administration." *Maddox v. Love*, 655 F.3d 709, 719–20 (7th Cir. 2011) (internal quotation marks and citation omitted). Even so, the Establishment Clause "does not require a prison to provide identical worship opportunities for every religious sect or group. A prison is required only to afford all prisoners reasonable opportunities to exercise their religious freedom." *Henderson v. Frank*, 190 Fed.Appx. 507, 509 (7th Cir. 2006) (internal citations and quotation marks omitted).

Miller-Bey alleges that ISP provides celebratory meals for Christian holidays and other Islamic sects, but he did not receive celebratory meals for the Muslim holidays of 'Eid al-Fitr and 'Eid ul-Adha in either 2023 or 2024. ECF 1 at 2, 9-11. He asserts that he sent requests to Chaplain Walker and other unnamed chaplains asking to participate in these Muslim holidays, but they never responded to his requests. *Id*. at 2. Miller-Bey states Religious Director Liebel was responsible for providing celebratory meals for the

6

MSTA Community in 2023 and 2024 on par with those provided for Christians and other Islamic sects, but he failed to do so. *Id*. at 11. Miller-Bey has plausibly alleged a First Amendment Establishment Clause violation based on the differential treatment of Muslims within the MSTA Community with respect to celebratory meals as compared to Christians and other Islamic sects.

Here, Miller-Bey may proceed against Religious Director Liebel because he is responsible for celebratory meals. *See* Ind. Dep't of Corr., Religious Services, Policy and Administrative Procedure No. 01-03-101, p. 22, available at https://www.in.gov/idoc/files/policy-and-procedure/policies/01-03-101-Religious-Services-3-1-2022.pdf, last visited (Apr. 17, 2026) ("A request for group observance of or special accommodation for a religious holiday, celebration or fast shall be referred to the Director [of Religious Services]."). Therefore, giving Miller-Bey the benefit of all reasonable inferences, I will allow him to proceed on a First Amendment Establishment Clause claim against Religious Director Liebel in his individual capacity for compensatory and punitive damages for failing to provide celebratory meals in 2023 and 2024 on par with those provided for Christians and other Islamic sects. Furthermore, I will allow Miller-Bey to proceed against Warden Neal in his official capacity for injunctive relief to receive celebratory meals on par with those provided by adherents of other faiths, consistent with the First Amendment.

While Miller-Bey also alleges that each of the defendants named in this action violated his First Amendment Establishment Clause rights by denying him celebratory meals, he has not alleged facts from which it can be plausibly inferred that Warden

Neal, Assistant Warden Buss, Chaplain Walker, Dr. Marthakis, Nurse Pflughaupt, or Nurse Turner had anything to do with the decisions involving celebratory meals. *See Emad v. Dodge Cnty.*, 71 F.4th 649, 653 (7th Cir. 2023) (emphasizing the necessity of determining the "involvement of each individual defendant in conjunction with Emad's personal and group prayer claims" in a § 1983 claim for damages). Therefore, I will not allow him to proceed against these defendants.

Miller-Bey has also sued Warden Neal under RLUIPA for failing to provide celebratory meals to the MSTA Community to celebrate their Moorish and Islamic holidays. ECF 1 at 12. Here, Miller-Bey has plausibly alleged that denying him the holidays of Eid al-Fitr and Eid ul-Adha substantially burdens his religious practice. However, it is unclear what those two feasts require and whether RLUIPA would require the prison to provide them. *See Cutter*, 544 U.S. at 720 n.8 (RLUIPA is "[d]irected at obstructions institutional arrangements place on religious observances" and "does not require a State to pay for an inmate's devotional accessories."). But those issues can be developed as the case proceeds. Miller-Bey may proceed against Warden Neal in his official capacity to permit him be able to celebrate Muslim holidays, to the extent required by RLUIPA.

*Religious Services*

Miller-Bey next alleges the Establishment Clause was violated because religious services were available for other religions communities at ISP, but services for the MSTA Community were discontinued. ECF 1 at 6-9. He explains that, on November 10, 2023, Chaplain Walker gave the MSTA Community a letter stating that "[o]ur goal is to

ensure that EVERY religious community gets to meet, without distractions." ECF 1-1 at 5. To achieve this goal, the chaplains are required to submit names of facilitators for each group. *Id*. Chaplain Walker explained she had presented the names of three nominees to Deputy Warden Buss to serve as facilitators for the MSTA Community, but later learned that two of those nominees could not serve as a facilitator. *Id*. Deputy Warden Buss consulted with Religious Director Liebel, who said elections were not allowed and the chaplains had been selecting the facilitators. *Id*. Chaplain Walker indicated a facilitator must represent the five highest principles of love, truth, peace, freedom, and justice in imitation of MSTA Founder Noble Drew Ali. *Id*.

Chaplain Walker also indicated nominees who had Security Threat Group ("STG") indicia in their files was not the determining factor in their selection as a facilitator. *Id*. Instead, a facilitator is chosen on the basis of reputation, behavior, how long it has been since they had a write-up, along with other factors. *Id*. Chaplain Walker asked members of MSTA Community to provide her with names of trusted people who could lead religious services. *Id*.

Miller-Bey asserts that the following week Chaplain Walker informed the MSTA Community that the religious services were being discontinued. ECF 1 at 7. Miller-Bey sent a request to Chaplain Walker asking why the services had been discontinued and what Indiana Department of Correction ("IDOC") policy she had relied on in cancelling the services. *Id*. Chaplain Walker responded to Miller-Bey's inquiry by sending him two memos dated November 19, 2023, and November 28, 2023. *Id*.; ECF 1-1 at 6–7. In the first memo, she stated the chaplains had reviewed his request regarding IDOC policy

and he should direct his inquiries through the grievance process. ECF 1-1 at 6. In the second memo, Chaplain Walker indicated she had been asked by members of the MSTA Community to meet but she did not have answers to their questions. ECF 1-1 at 7. She noted the administration was looking into some things and Deputy Warden Buss had concerns but they were not willing to give specifics. *Id*.

On November 21, 2023, Miller-Bey filed a grievance, which was subsequently denied. ECF 1 at 8; ECF 1-1 at 8–9. In denying the grievance, the grievance officer, who had spoken to Deputy Warden Buss and Chaplain Walker stated that "[t]here wasn't anyone in the community to lead it that would pass Internal Affairs/administration approval." ECF 1-1 at 9. Deputy Warden Buss told Chaplain Walker that they could not have elections, there was no grand sheik, and the administration would need to approve a facilitator to have religious services. *Id*. Chaplain Walker further added that "Both Ms. Buss [and] Dave Liebel were involved in the discussion with [her] about how to handle [her] concerns." *Id*. Chaplain Walker indicated facilitators are screened for other religious communities and the administration was concerned about safety and security based on discussions with the chaplains. *Id*. Miller-Bey was one of the people who the MSTA Community wanted as their grand sheik, but he had "STG on his packet." *Id*. The grievance officer noted IDOC policy was being followed for discontinuing the MSTA religious services and the religious group was closed because an approved facilitator could not be selected by the administration. *Id*.

Based on these events, Miller-Bey asserts that Deputy Warden Buss, Religious Director Leibel, and Chaplain Walker denied him the right to practice his religion when

10

they discontinued the MSTA's religious services. Giving Miller-Bey the inferences to which he is entitled at this stage of the proceedings, he has stated plausible First Amendment Establishment Clause claims against Deputy Warden Buss, Religious Director Liebel, and Chaplain Walker in their individual capacities for compensatory and punitive damages for discontinuing the MSTA Community's religious services beginning in November 2023.[2] Furthermore, I will allow Miller-Bey to proceed against Warden Neal in his official capacity on an injunctive relief claim to permit him to participate in religious services for the MSTA Community, to the extent required by the First Amendment.

Miller-Bey has also sued Warden Neal under RLUIPA because he failed to "accommodate members of the MSTA Islamic sect with the opportunity to worship and study according to our religious beliefs." ECF 1 at 12. Here, Miller-Bey has plausibly alleged that denying him an opportunity to worship his religious beliefs substantially burdens his religious practice. Therefore, I will allow Miller-Bey to proceed against Warden Neal in his official capacity to be able to participate in religious services for the MSTA Community, to the extent required by RLUIPA.

*Equal Protection*

Miller-Bey next asserts a Fourteenth Amendment Equal Protection claim against the defendants for failing to provide celebratory meals and religious services. ECF 1 at

---

[2] While Miller-Bey also alleges that each of the defendants violated the Establishment Clause by denying him his right to practice his religion, he has not alleged facts from which it can be plausibly inferred that Warden Neal, Dr. Marthakis, Nurse Pflughaupt, or Nurse Turner were responsible for the decision to discontinue religious services for the MSTA Community. Therefore, he may not proceed against these defendants.

11, 13. "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). To state such a claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor . . . ." *Id*. at 719–20 (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *see also David K. v. Lane*, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting discrimination must be intentional, purposeful, or have a discriminatory motive). Miller-Bey must show "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group." *Id*. (citation omitted).

Miller-Bey alleges the defendants discriminated against the MSTA Community by calling the group "gang bangers," by stating that none of the MSTA members could pass internal affairs approval to serve as a facilitator, and by creating rules to keep the group from "forming, growing, and practicing" their sincere religious beliefs. ECF 1 at 13. He states the defendants treated other religious groups more favorably by allowing them to fulfill their religious obligations. *Id*. Because Miller-Bey has not alleged facts that show that any of the defendants purposefully singled out the MSTA Community and intentionally discriminated against him on the basis of his Muslim faith, he may not proceed here.

*Medical Care*

Miller-Bey next asserts that when he ate a standard diet he suffered from gastroesophageal reflux disease, chest pains, shortness of breath, dizziness, stomach aches, coughing spells, pulsating migraine headaches, and severe constipation that caused his hemorrhoids to bleed and secrete "smelly puss from irritation and strain moving [his] bowels." ECF 1 at 4, 10. Dr. Nancy Marthakis took x-rays which showed his bowels were congested and he was having difficulty breaking down animal by-products. *Id.* at 4. She asked Miller-Bey about his diet, and he told her he ate a standard diet, which contained onions, tomato paste, garlic, soy-based products, and artificial meat. *Id.* at 4-6. She responded by stating, "Well I know you have to work with what you're offered but you need Vitamin C and fiber to help you push the food out or its gonna come back up and cause problems." *Id.* at 4-5. Dr. Marthakis prescribed famotidine and Tylenol, but his symptoms worsened. *Id.* at 5. He asserts he "came back with the same symptoms but more severe more than [fifteen] times these same symptoms [were] ongoing." *Id.* at 5. Miller-Bey alleges that Nurse Turner and Nurse Pflughaupt "stop[ped] calling [him] in." *Id.* Miller-Bey contends that the only people who could change his diet were the medical or religious staff, but instead they abandoned him and left him in pain from August 5, 2023, to February 11, 2025. *Id.*

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is

13

"serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks and citation omitted). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (citation omitted). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation omitted), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Here, Dr. Marthakis took x-rays of Miller-Bey's bowels and prescribed famotidine and Tylenol for his symptoms. Miller-Bey faults Dr. Marthakis for not doing more, but it cannot be plausibly inferred from the facts alleged in the complaint that she failed to use her medical judgment when treating Miller-Bey. Furthermore, while Miller-Bey asserts he came back fifteen times with more severe symptoms and Nurse Turner and Nurse Pflughaupt stopped calling him in, he does not provide any dates or details whatsoever. He does not indicate if he was treated by either of these nurses and,

14

if so, what that treatment entailed. Therefore, he has not plausibly alleged that Dr. Marthakis, Nurse Turner, or Nurse Pflughaupt were deliberately indifferent to his medical needs stemming from his standard diet, and he may not proceed against them.

To the extent Miller-Bey asserts Religious Director Liebel and Chaplain Walker could have changed his diet, he does not allege they knew about his medical issues and symptoms related to consuming a standard diet. But, even if they did know that Miller-Bey believed the standard diet was causing his medical issues, Religious Director Liebel and Chaplain Walker are not medical providers, and they cannot be held liable for failing to approve a religious diet based on an alleged medical need for an alternative to the standard diet. Because it cannot be plausibly inferred from the facts alleged in the complaint that Religious Director Liebel or Chaplain Walker were deliberately indifferent to Miller-Bey's medical needs, he may not proceed against them on an Eighth Amendment claims for allegedly inadequate medical care.

For these reasons, the court:

(1) GRANTS Terrence T. Miller-Bey leave to proceed against Religious Director David Liebel and Chaplain Anne Walker in their individual capacities for compensatory and punitive damages for denying him a diet consistent with his sincere religious beliefs beginning in July 2023, in violation of the First Amendment;

(2) GRANTS Terrence T. Miller-Bey leave to proceed against Warden Ron Neal in his official capacity for injunctive relief to obtain a diet that complies with his sincere religious beliefs to regularly consume halal meat from herbivorous animals and to eat

15

food prepared only by Muslims, to the extent required by the First Amendment and RLUIPA;

(3) GRANTS Terrence T. Miller-Bey leave to proceed against Religious Director David Liebel in his individual capacity for compensatory and punitive damages for failing to provide celebratory meals in 2023 and 2024 for the Islamic holidays on par with those provided for Christian and other Islamic sects, in violation of the First Amendment;

(4) GRANTS Terrence T. Miller-Bey leave to proceed against Warden Ron Neal in his official capacity for injunctive relief to receive celebratory meals on par with those provided by adherents of other faiths, to the extent required by the First Amendment and RLUIPA;

(5) GRANTS Terrance T. Miller-Bey leave to proceed against Deputy Warden Dawn Buss, Religious Director David Liebel, and Chaplain Anne Walker in their individual capacities for compensatory and punitive damages for discontinuing the MSTA Community's religious services beginning in November 2023, in violation of the First Amendment;

(6) GRANTS Terrance T. Miller-Bey leave to proceed against Warden Ron Neal in his official capacity to be permitted to participate in religious services for the MSTA Community, to the extent required by the First Amendment and RLUIPA;

(7) DISMISSES all other claims;

(8) DISMISSES Dr. Nancy Marthakis, Nurse Kimberly Pflughaupt, and Nurse Tiffany Turner;

16

(9) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Ron Neal, Assistant Warden Dawn Buss, Religious Director David Liebel, and Chaplain Anne Walker at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(10) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(11) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden Ron Neal, Assistant Warden Dawn Buss, Religious Director David Liebel, and Chaplain Anne Walker to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on April 20, 2026.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT